UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS SANDUSKY,

    Plaintiff,

v.

COMMANDER MOUNSEY, *et al.*,

    Defendants.
    _____/

Case No. 17-11784

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND EXTEND DISCOVERY [48] AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF AND EXHIBITS [60]**

    This case arises from the death of Hal Sandusky, who was a detainee at the Detroit Police Department's ("DPD") Second Precinct jail when he passed away on June 28, 2013. The personal representative of Hal Sandusky's estate, Plaintiff Thomas Sandusky (Hal Sandusky's son), named seventeen (17) DPD officers as defendants in his first lawsuit, filed on June 6, 2017, as well as the City of Detroit and DPD. Defendants filed a Notice of Non-Party Fault against Dr. Sarah E. Albers. (Dkt. # 5, filed on 08/30/17). On May 4, 2018, Plaintiff filed a medical malpractice action in Wayne County Circuit Court against Dr. Albers and Detroit Receiving Hospital. Plaintiff then filed a second federal lawsuit on May 15, 2018 in which he named Dr. Albers and twenty-one (21) additional DPD officers as defendants. (Case No. 18-cv-11533). Plaintiff brings deliberate indifference claims against all Defendants, gross negligence claims against Defendant Officers, and a supervisory liability claims against Defendant City of Detroit and nine (9) Defendant Officers.

This matter is now before the Court on Plaintiff's Motion to Compel and Extend Discovery (Dkt. # 48) and Plaintiff's Motion for Leave to File Supplemental Brief and Exhibits (Dkt. #60). The Court held a hearing on the motions on September 12, 2018. For the reasons stated below, this Court GRANTS both motions.

**I.  BACKGROUND**

Hal Sandusky was thirty-five (35) years old when he was arrested on June 25, 2013 following a domestic altercation at his girlfriend's home. Hal Sandusky cut his arm on a broken window during the altercation. Arresting DPD officers took Hal Sandusky to the Detroit Receiving Hospital for treatment. Plaintiff was treated in the emergency room by Defendant Dr. Sarah E. Albers and discharged back into the custody of DPD with instructions to: follow up for removal of sutures; return to the ER if not getting better or feeling worse; wash and dry the wound with warm water and soap after 24 hours; and call a physician if there is redness, pain, swelling, pus, or if the stitches come out, or if there are any new or bothersome symptoms.

On June 26, 2013, Hal Sandusky was interrogated by members of DPD's Domestic Violence Unit. On the night of June 27, 2013, detainees and officers observed that Sandusky was moaning, vomiting, and had diarrhea. He then became unresponsive in his cell. DPD officers administered CPR. EMS eventually arrived and transported Hal Sandusky to Sinai-Grace Hospital where his arm was observed to show infection with sloughing of the skin and mottling. A blood culture was positive for streptococcus bacteria. His platelet count was within normal limits. Hal Sandusky was pronounced dead on June 28, 2013 at 12:56am.

On June 29, 2013, Assistant Wayne County Medical Examiner performed an autopsy and concluded that Hal Sandusky died of infection and sepsis. Defendants' expert, on the other hand, has opined that Hal Sandusky died of cardiac arrest caused by an enlarged heart and defective left ventricle.

After Hal Sandusky's death, DPD conducted an Internal Affairs Force Investigation Administrative Review. The investigators concluded that Defendants David Newkirk and William O'Brien engaged in sustained misconduct regarding their interactions with Hal Sandusky. According to the report, Defendant Newkirk failed to initiate and carry out fifteen-minute monitoring and failed to prepare Hal Sandusky's detainee Medical/Mental Health Monitoring Log once he believed Hal Sandusky was suffering from withdrawals, which elevated his status to a "High Risk Detainee." The findings regarding Defendant O'Brien, along with large portions of the report, have been redacted.

Pursuant to this Court's scheduling order for the first case (17-cv-11784), discovery closed on May 1, 2018, and the dispositive motion deadline was on June 1, 2018. However, a significant amount of discovery has yet to be completed, and no Defendant has been deposed.

## II. ANALYSIS

### A. Motion to Compel and Extend Discovery

Plaintiff filed his motion to compel on May 14, 2018. Plaintiff requests that the Court extend discovery for an additional 60 days and compel Defendants to produce a number of documents.

According to Plaintiff, Defense Counsel has refused to produce a single person for deposition and has delayed and/or refused to provide the most basic records and

documents. Plaintiff maintains that Defense Counsel refused to produce DPD's internal investigation file except for two heavily redacted memos which were not produced until the last day of discovery, refused to produce requested officer shift schedules until after discovery closed, and refused to produce Hal Sandusky's custody, incarceration, and medical records and jail videos.

According to Defendants, Plaintiff has been dilatory in prosecuting his claims. Defendants argue that Plaintiff had ample opportunity to obtain all of the relevant information during the discovery period, yet Plaintiff took no depositions and waited until after the close of discovery to file a motion to compel. Defendants assert without any further argument or explanation that they will be "extremely prejudiced" if the Court gives Plaintiff additional time for discovery because Hal Sandusky's death occurred five years ago.

The record indicates that Plaintiff requested the complete DPD internal investigation file pertaining to Hal Sandusky's death as early as October 2017. *See* Dkt. # 48-2; Dkt. # 48-4; Dkt. # 53, Pg ID 584.

On October 18, 2017, Plaintiff served on Defendants City of Detroit and DPD a Request for Production specifically requesting:

> 1- All arrest, incarceration, custody, medical records and other information including photos, videos, and audio files regarding Hal Sandusky and his arrest, detainment, and incarceration from June 25, 2013 through June 27, 2013;

4

> 2- All records, documents, inmate statements, witness statements, PCR's, photos, videos, audio files, and other materials concerning any investigation undertaken regarding Hal Sandusky and/or his June 2013 incarceration; and
>
> 3- All desk blotters, shift schedules, and other documents, records or materials identifying or showing which individuals were scheduled and/or assigned to work at the precinct where Hal Sandusky was housed and detained from June 25, 2013 through June 27, 2013.

(Dkt. # 48-2, Pg ID 395).

On November 27, 2017, Defendants provided incomplete responses to the October 2018 Request for Production. In response to number 1, Defendants provided 24 pages of records limited to the time period before Hal Sandusky was placed in the Second Precinct jail on June 25, 2018 and the time period after he was found unresponsive in his cell the night of June 27, 2018. Defendants did not produce any incarceration, custody (intake, classification, placement, cell check, cell count, officers' detainee logs, or KITE records), or medical records or jail videos regarding Hal Sandusky for the time period in between these two reference points. *See* Dkt. # 48-3. In response to number 2 requesting all records of and materials related to any investigation regarding Hal Sandusky, Defendants provided only four audio recorded inmate interviews. *See id.* at Pg ID 400. In response to number 3, Defendants did not provide any information, stating that they would produce this information under separate cover upon receipt. *See id.*

The record also indicates that Plaintiff served on Defendants City of Detroit and DPD another Interrogatory and Request to Produce on November 28, 2017 requesting:

5

    1- Name of each person who was held, detained, housed, and/or incarcerated at the Second Precinct jail at any time from June 25, 2013 through June 27, 2013, as well as the address, telephone number, date of birth, dates and times of detention / incarceration, area of detention / incarceration and cell number, and all housing records, logs, and classification records for each such person; and

    2- Digital copies of each individual Defendant's last taken DPD work portrait photo.

(Dkt. # 53, Pg ID 584). It appears that Defendants never responded to this Interrogatory and Request to Produce.

    Plaintiff has subsequently followed up on these requests several times through e-mail correspondence with Defense Counsel. *See* Dkt. # 48-4. On the last day of discovery, Defendants produced two heavily redacted reports from the DPD internal investigation file (13 of 32 pages of the force investigation report were completely redacted). *See* Dkt. # 48-5. After the close of discovery, Defendants produced some of the requested officer shift schedules on May 4, 2018 and May 11, 2018. *See* Dkt. # 48-6; Dkt. # 48-7. Plaintiff maintains that these late responses were deficient because Defendants failed to produce the rest of the investigation file; the rest of the shift schedules; incarceration, custody, and medical records; and jail videos. Plaintiff argues that the late responses were further deficient because, by waiting until the last day of discovery and after the close of discovery, Defendants impeded Plaintiff's ability to follow up with further discovery. Plaintiff also notes that additional officer names were listed in the shift schedules that Defendant produced

after discovery closed, and Plaintiff argues that he should be given the opportunity to depose those newly-identified officers.

Regarding depositions, the record indicates that Plaintiff requested to take the depositions of two investigating DPD officers as early as November 2017 when Plaintiff learned of the officers through the inmate audio interviews. *See* Dkt. # 48-4. Plaintiff made at least four e-mail requests for dates for the depositions of investigating officers Starks and Shea between November 2017 and April 2018. *See id.* Defense Counsel's legal secretary responded in January 2018 that she would get back to Plaintiff's Counsel as soon as she received dates for the depositions; however, Defense Counsel did not provide dates for these depositions until late April. *See id.*; Dkt. # 53, Pg ID 588. On April 26, 2018, Defense Counsel agreed to a May 8, 2018 date for the depositions (one week after the close of discovery). *See* Dkt. # 49, Pg ID 524. Plaintiff noticed the depositions on April 27, 2018, the day after Defense Counsel agreed on the date and time. *See* Dkt. # 48-8. On May 7, 2018, Defense Counsel canceled the depositions. Plaintiff requested that Defense Counsel agree to a 2-3 month extension of the discovery period, but Defense Counsel refused. *See* Dkt. # 48-4, Pg ID 431.

Defendants argue that it is Plaintiff's Counsel's fault that the depositions have not taken place because, although the City agreed to facilitate the depositions of non-party Scott Shea (no longer employed with DPD) and non-party Sergeant Starks, Plaintiff's Counsel did not serve Notices of Depositions or subpoenas on the non-party proposed deponents. Defendants also assert that the depositions had to be adjourned because Sergeant Starks is on medical leave, and Shea did not have sufficient time to request time off work.

Plaintiff correctly notes that the Court's scheduling order in this case has yet to be extended or modified. Plaintiff maintains that he is requesting a single, reasonable extension to permit him the opportunity to depose Defendants and complete discovery.

Fed. R. Civ. P. 16(b)(4) provides for extensions of scheduling orders for good cause shown. Plaintiff argues that good cause exists here because Plaintiff has not been able to depose any witnesses and is still waiting on Defendants to produce basic discovery documents. Plaintiff also did not receive any documents from DPD's internal investigation file until the last day of discovery and did not receive shift schedules until after the close of discovery and needs additional time to follow up with further discovery.

Defendants argue that Plaintiff has not demonstrated good cause for modifying the scheduling order. Defendants also point to Fed. R. Civ. P. 26(b)(2)(C)(ii), which provides that the Court must limit discovery if the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action. Defendants argue that the Court should deny Plaintiff's motion because Plaintiff did not seek to take the deposition of even one named Defendant during the discovery period and had ample time to do so. Defendants also argue that Plaintiff's motion to compel is untimely and should have been filed during the discovery period.

Plaintiff replies that he needed to depose the two investigating officers first because he did not have any other part of the DPD internal investigation file until the close of discovery and needed to learn more about the incident. Plaintiff argues that he should not be forced to go on a blind fishing expedition by attempting to depose Defendants on what they did during a 48-hour period which occurred years ago without having any records of what happened during that 48-hour period. Plaintiff argues that the relevant records are

necessary before the depositions, and that Plaintiff first requested to depose the investigating officers in order to discover how many investigations were conducted, who was interviewed, what records were collected, what was reviewed, and who was responsible for monitoring Hal Sandusky during the relevant time period. Plaintiff further argues that the records and initial depositions would have enabled Plaintiff to eliminate some of the named Defendants, which has always been Plaintiff's intention. Plaintiff maintains that Defendants are trying to ram through a motion for summary judgment without having to produce the essential records in this case. According to Plaintiff, Plaintiff's Counsel was led to believe that materials such as the shift schedules and dates for the depositions of the two investigating officers would be provided months before the close of discovery. Plaintiff states that he did not file a motion to compel before the close of discovery because Plaintiff's Counsel was led to believe that two depositions would happen on May 8th, and he would not know the full extent of outstanding discovery until after the depositions were complete.

Although Plaintiff's Counsel perhaps could have moved this case along faster, the Court finds that he has been reasonably expeditious. Given Defendants' incomplete and late discovery responses, the Court concludes that Plaintiff has shown good cause to extend the scheduling order. The Court will grant Plaintiff's Motion to Compel and Extend Discovery.

### B. Motion for Leave to File Supplemental Brief and Exhibits

On August 20, 2018, Plaintiff filed a motion requesting leave to file a ten-page supplemental brief with recently-obtained exhibits in opposition to Defendants' motion for

summary judgment in the first lawsuit. To date, Defendants have not filed any response opposing this motion.

The record indicates that the proposed supplemental brief is based on its attached exhibits, most of which were produced by Defendants after Plaintiff filed his initial response to Defendants' motion for summary judgment (with the exception of an affidavit from Plaintiff's expert, which Plaintiff received in early July when expert disclosure were due, also after Plaintiff filed his initial response to the motion for summary judgment). *See* Dkt. # 59. Accordingly, the Court will grant Plaintiff's Motion for Leave to File Supplemental Brief and Exhibits.

### III.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion to Compel and Extend Discovery (Dkt. # 48) and Plaintiff's Motion for Leave to File Supplemental Brief and Exhibits (Dkt. #60) are GRANTED.

IT IS FURTHER ORDERED that Defendants shall produce to Plaintiff:

(a) **No later than October 5, 2018**, complete responses to Plaintiff's Request for Production served on October 18, 2017, including all of Hal Sandusky's medical records, detainee log records, placement records, KITE records, KITE response records, jail videos, audio files, and photos; all command level investigation files, all internal investigation files related to Hal Sandusky including the Force Investigation File 13-034, all attached exhibits, personnel files, policies and procedures, evidence logs, shift schedules, photos, videos, and audio files referenced in any investigation; and the remaining shift schedules, daily detail logs, cell check logs, and activity logs for the officers working in the Second Precinct jail during the time period of Hal Sandusky's confinement that have not yet been produced;

(b) **No later than October 5, 2018**, complete responses to Plaintiff's Request for Production served on November 28, 2017, including the name of each

person who was held, detained, housed, and/or incarcerated at the Second Precinct jail at any time from June 25, 2013 through June 27, 2013, as well as the address, telephone number, date of birth, dates and times of detention / incarceration, area of detention / incarceration and cell number, and all housing records, logs, and classification records for each such person; and digital copies of each individual Defendant's last taken DPD work portrait photo; and

(c) **As soon as possible**, the individual Defendants, as well as investigating officers Sergeant Starks and Scott Shea, for depositions. **All parties are instructed to proceed with depositions as soon as possible in an expeditious manner**.

The Court will enter a new scheduling order in the consolidated matter following the **scheduling and status conference scheduled for October 10, 2018 at 11:00am**.

SO ORDERED.

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 13, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 13, 2018, by electronic and/or ordinary mail.

s/ Lisa Bartlett
Case Manager